A warranty that horses are "sound and kind in every respect" is broken if one of. the horses is in the habit of making sudden plunges without cause.

Appeal from circuit court, Kings county.

Action by Edward J. Hall, Jr., against Cornelius R. Colyer. Verdict for plaintiff. From the judgment rendered thereon defendant appeals.

Argued before BARNARD, P. J., and DYKMAN, J.

*Daniel B. Thompson,* for appellant. *Melville Egleston,* for respondent.

BARNARD, P. J. The action is one for breach of warranty, given on the sale of a team of horses by defendant to plaintiff. The warranty was in writing, and was that the team was "sound and kind in every respect." The warranty being undisputed, the sole question litigated on the trial was whether there was a breach. It is proven that on the very first occasion the horses were used by the plaintiff one of the horses put down his head without cause, and rushed away to one side of the road, and barely escaped running into another carriage. The same horse subsequently, and with the same driver, again, without cause, "plunged across the road." The team in both instances was managed by a careful and skillful driver. When the team arrived at. plaintiff's residence, and his family had gone into the house, and the team started for the barn, the same horse again made a sudden turn to the side of the road. It was further proven that during the month of May, 1888, shortly after the purchase of the team, the horse again plunged to the left, while plaintiff and his family were in the carriage, and then barely escaped running into another carriage. The unkindness of the horse was proven by other witnesses, on other occasions. They all considered the team unsafe to drive, and, if the facts testified to are to be credited, the horse was obviously vicious and ungovernable, and unsafe to be used as a family team. The defendant does not deny the inference to be drawn from the evidence, but claims that it does not show unkindness at the time of the sale. When the actions of the horse, showing a bad, ungovernable temper, are shown so soon after the sale, and continue, and are without reason, the jury were entitled to take the evidence of subsequent conduct as evidence of previous unkindness. The defendant gave evidence tending to show the fact that the driver was unkind. The jury have passed upon the question, and the finding is in favor of the positive evidence of facts showing a breach of warranty. The judgment should therefore be affirmed, with costs.

---

## PEOPLE *v.* BIRD *et al.*

*(Supreme Court, General Term, Second Department.* February 10, 1890.)

1. MUNICIPAL CORPORATIONS—WATER COMMISSIONERS—ELECTION.

　　Laws N. Y. 1875, c. 181, gave "the authorities" of incorporated villages power to organize themselves into boards of water commissioners, and supply their villages with water. The term "authorities," as used in the act of 1875, was by Laws 1879, c. 86, defined as the president and trustees; and by Laws 1885, c. 170, it was provided that the term should include—*First,* the president and trustees; or, *second,* the same number of commissioners, to be elected at a special election called by the trustees, on the written request of a majority· of the resident tax-payers on the last assessment roll. *Held,* that the right of the trustees to be a water board, in the absence of an

election of commissioners, was only provisional, and that, if such request was made, the trustees must give notice for the special election, and the persons elected became the board of water commissioners on filing their official oath.

**2. SAME—EVIDENCE.**

Testimony of the village clerk that the names contained in the petition for the election represented a majority of the tax-payers of the village, as contained in the last assessment roll, is sufficient proof that the petitioners represented a majority of the tax-payers.

Appeal from special term, Westchester county.

Action by the attorney general, on behalf of the people of the state of New York, to prevent the defendants, Seth Bird, Dowah D. Tallman, Eugene Barnes, Frank R. Pierson, Ferdinand Mangold, and Joseph W. Tompkins, from retaining the office of or acting as water commissioners of the village of Tarrytown, N. Y., on the ground that the president and board of trustees of that village were the water commissioners thereof. There was a judgment in favor of defendants, from which plaintiffs appeal.

Argued before BARNARD, P. J., and DYKMAN, J.

Charles T. Tabor, Atty. Gen., and E. T. Lovatt, for the People. J. S. Millard, for respondents.

BARNARD, P. J. By chapter 181, Laws 1875, the authorities of incorporated villages were clothed with power to organize themselves into boards of water commissioners, and supply their villages with pure and wholesome water. By chapter 86, Laws 1879, the authorities of villages in the previous act were defined to be the president and trustees thereof. By chapter 170, Laws 1885, the legislature provided that the term "authorities" should include—First, the president and trustees thereof, with terms of office for the term for which they were elected; or, second, the same number of commissioners to be elected at a special election called by the trustees on the written request of a majority of the resident tax-payers on the last assessment roll. In July, 1887, a special meeting of the tax-payers was called by the trustees of Tarrytown for the 15th of August, 1887, according to the requirement of section 21 of chapter 181, Laws 1875. This meeting was necessary before the taxes needed for the water system could be legalized. The meeting voted in favor of the tax. The president and trustees were then the water commissioners, and so considered to be, themselves and successors, up to the 12th of September, 1887. On the 25th of August, 1887, a majority of the resident tax-payers requested in writing an election of a board of water commissioners under the Laws of 1885. Such a call was made, and the defendants were elected water commissioners of the village on the 12th September, 1887, and immediately entered upon the duties of the office, with the assent of the trustees. The election of the water board was legal. The right of the trustees to be a water board, in the absence of an election of commissioners, upon request of the tax-payers, was only provisional. If a majority of the tax-payers made the request for a popular election, the trustees were compelled to call the meeting, and the persons elected became the board of water commissioners upon filing their official oath.

The proof that the petition contained a majority of the resident tax-payers was sufficient. The witness Brown, who was the clerk of the village, testified that the names represented a majority of all the tax-payers of the village as contained in their last assessment roll. The trustees acknowledged the jurisdictional fact. The petition contained a certificate that W. S. Bird had obtained all the names on the petition. No proof was offered on the trial that the names on the petition were other than genuine. Under these circumstances, the presumption should be in favor of the petition. The judgment should therefore be affirmed, with costs.